# IN THE COURT OF APPEALS OF IOWA

––––––––––––––

No. 25-0905
Filed July 8, 2026

––––––––––––––

**State of Iowa,**
Plaintiff–Appellee,

v.

**Bendjy Joseph,**
Defendant–Appellant.

––––––––––––––

Appeal from the Iowa District Court for Cerro Gordo County,
The Honorable Karen Kaufman Salic, Judge.

––––––––––––––

**AFFIRMED**

––––––––––––––

Mark C. Meyer, Iowa City, attorney for appellant.

Brenna Bird, Attorney General, and Adam Kenworthy, Assistant Attorney
General, attorneys for appellee.

––––––––––––––

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

Bendjy Joseph appeals his conviction for domestic abuse assault as a second offense. He argues the district court erred when it declined to instruct the jury on the defense of justification and argues the State committed prosecutorial misconduct for comments made during the State's rebuttal closing argument. Because we find Joseph was not entitled to justification instructions and failed to preserve his prosecutorial misconduct claim, we affirm his conviction.

## BACKGROUND FACTS AND PROCEEDINGS

Joseph was living with his girlfriend in early 2025. One night in late January, a neighbor was in her apartment when Joseph's girlfriend knocked on the door. The neighbor opened the door to Joseph's girlfriend standing there crying and shaken. After talking to her, the neighbor took her back to Joseph's apartment to get her purse.

When back at the apartment, the girlfriend began to argue with Joseph. Soon, the argument turned physical and Joseph picked his girlfriend up by the hood of her sweatshirt and threw her into the hallway outside the apartment. All the while, Joseph began to call his girlfriend names before they both spit in each other's faces.

Joseph left the apartment soon after. The neighbor observed a red mark on the side of the girlfriend's neck. After law enforcement officers arrived on the scene, the girlfriend said that she was in pain and the officers documented the injuries to her neck. As a result, the State charged Joseph in an amended trial information with domestic abuse assault causing bodily injury under Iowa Code sections 708.2A(1), 708.2A(2)(b), and 708.1(2)(a) (2025). The State further alleged that Joseph was subject to enhanced

penalties under Iowa Code section 708.2A(3)(b) because he was previously convicted of domestic abuse assault.

The matter proceeded to a jury trial. Joseph's girlfriend testified as a witness on his behalf and recanted her allegations that any assault occurred. Instead, she testified that she caused the red marks on her own neck, denied that Joseph spit in her face, and made up the accusations that Joseph assaulted her. But the State rebutted her testimony with her statements to law enforcement on the night of the incident.

At the close of evidence, Joseph, for the first time, requested justification instructions. The State objected arguing that there was no evidence presented that the incident could have been justified. The district court agreed and did not include the instruction.[1]

The jury convicted Joseph of domestic abuse assault. Joseph stipulated that he was previously convicted of domestic abuse assault. The district court sentenced Joseph to ninety jails in the county jail with all but two days suspended in favor of a two-year term of probation. Joseph now appeals.

## STANDARD OF REVIEW

We review claims on jury instructions for correction of errors at law. *State v. Huser*, 894 N.W.2d 472, 501 (Iowa 2017). And "[w]e review a district court's decision on claims of prosecutorial misconduct for abuse of discretion, which occurs when 'a court acts on grounds clearly untenable or

---

[1] We note that the marshalling instruction included the words "without justification." But based on the ruling of the district court and the fact that none of the instructions explaining the justification defense were included, we believe "without justification" was included in error.

to an extent clearly unreasonable.'" *State v. Coleman*, 907 N.W.2d 124, 134 (Iowa 2018) (citation omitted).

## DISCUSSION

### I. Justification Instruction

Joseph first argues that the district court erred when it did not instruct the jury on the justification defense. If an affirmative defense is supported by substantial evidence, the court must instruct on it. *See State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020).

The State contests error preservation. The State's position is that the words "without justification" were added to the marshalling instructions and Joseph did not separately request the other justification instructions, so he failed to preserve his challenge to the jury instructions. We disagree. In order for error to be preserved the issue must "be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). In the jury instruction conference, Joseph's counsel argued there was "enough evidence on the record to warrant a self-defense instruction that the force used was reasonable under the circumstances." And the district court ruled, "Based on the evidence that has been submitted, there's not enough sufficient support to submit instructions on self-defense, and that will not be included." Therefore, we find Joseph raised the argument and the district court ruled on it, so it is preserved for our review.

Turning to the merits, we find Joseph was not entitled to justification instructions based on the evidence presented at trial. Justification is an affirmative defense. *State v. Delay*, 320 N.W.2d 831, 833 (Iowa 1982). Therefore, "the defendant bears the initial burden of producing sufficient

4

evidence to support the instruction." *Kuhse*, 937 N.W.2d at 628. Joseph argues that his girlfriend "started the incident, called Joseph names, and spit on him, and possibly broke things in the apartment." But the evidence presented at trial does not show that the girlfriend spit first. The neighbor testified that Joseph and his girlfriend spit on each other. And the girlfriend's testimony during the defense case was that no assault occurred at all. Additionally, we agree with the State that breaking things in the apartment is insufficient to form the basis for self-defense because Joseph would have needed to request specific instructions for defense of property. *Compare* Iowa Code § 704.3, *with id.* § 704.4.

Further, we find any error here was harmless. *See State v. Hanes*, 790 N.W.2d 545, 550 (Iowa 2010). The jury was told in the marshalling instruction that Joseph's act had to be "without justification" meaning they found that it was beyond a reasonable doubt. The evidence presented at trial established by both the victim's own words to law enforcement and the neighbor's testimony that Joseph picked his girlfriend up by the hood of her sweatshirt and threw her out of the apartment and into the hallway. The girlfriend's recantation weighs in our harmless error analysis, but as our supreme court has noted, the dynamics of domestic abuse often lead victims to recant before trial. *See State v. Smith*, 876 N.W.2d 180, 187–88 (Iowa 2016) (citing Laurie S. Kohn, *The Justice System and Domestic Violence: Engaging the Case but Divorcing the Victim*, 32 N.Y.U. Rev. L. & Soc. Change 191, 200–06 (2008)). And we also find the pictures of the girlfriend's injuries in context with her statements to responding officers weigh in favor of harmless error. Accordingly, we find any instructional error was harmless.

## II.    Prosecutorial Misconduct

Joseph then argues that the State engaged in prosecutorial misconduct during its rebuttal closing argument by urging the jury to (1) put themselves in the place of the victim, and (2) to convict Joseph for improper purposes. The State argues that Joseph failed to preserve error. We agree with the State that error was not preserved.

To obtain relief based on prosecutorial misconduct occurring during closing arguments, "a defendant 'must make timely and proper objection to the offending argument. Unless objection is made at the time of the argument, the defendant has waived his right to complain.'" *State v. Smith*, No. 18-2052, 2020 WL 376554, at *3 (Iowa Ct. App. Jan. 23, 2020) (quoting *State v. Romeo*, 542 N.W.2d 543, 552 (Iowa 1996)). A defendant need not "interrupt closing argument with an objection" and can timely preserve error if objections are "urged at close of argument and in a motion for mistrial made before submission to the jury." *Romeo*, 542 N.W.2d at 552 n.5 (citation omitted).

Our review of the record demonstrates that the State gave its rebuttal closing argument, the court inquired with the parties regarding the transcription of the reading of the jury instructions, the jury instructions were read, the jury attendant was sworn in, and the jury was sent to deliberate. It was only after all of these events that Joseph objected to the State's rebuttal closing. And during that time, the only statement Joseph objected to was when the prosecutor described domestic violence as starting with "scratches," which Joseph argues implies to the jury that he would commit escalating acts of violence if not convicted. That objection came too late, so we find error is not preserved on this issue. *See Smith*, 2020 WL 376554, at *4.

## CONCLUSION

We find the evidence at trial did not contain substantial evidence to support justification instructions, any instructional error was harmless, and Joseph failed to preserve his prosecutorial misconduct claim. Therefore, we affirm his conviction for domestic abuse assault.

**AFFIRMED.**

Tabor, C.J., concurs; Sandy, J., dissents.

**SANDY, Judge** (dissenting).

A drunk woman started a fight, lost it, and then told everyone she had made the whole thing up. Whatever else may be said of this record, it does not lend itself to confident appellate fact-finding. Yet that is what today's decision requires. The majority holds that no rational juror could have found Bendjy Joseph used reasonable force to remove an intoxicated aggressor from his own apartment, and that even if the jury should have been told what "justification" means, the omission did him no harm. I cannot agree with either conclusion. Because substantial evidence—much of it from the State's own witness—entitled Joseph to have the jury, rather the court, decide whether his conduct was justified, I respectfully dissent.

The governing rule is not seriously in dispute, only its application. Assault is statutorily defined as an act done "without justification." Iowa Code § 708.1(2) (2025). Justification is therefore an affirmative defense, and "[s]ubstantial evidence in the record from any source justifies submission of a self-defense instruction." *State v. Dunson*, 433 N.W.2d 676, 677 (Iowa 1988). When that quantum of evidence appears—whether it comes from the State, the defendant, or any witness—"the district court has a duty to give a requested instruction on the defense." *Id.* Evidence is substantial when "a reasonable mind would accept it as adequate to reach a conclusion." *State v. Davis*, 988 N.W.2d 458, 466 (Iowa 2022) (citation omitted). That is a low bar, and deliberately so. The defendant's burden at this stage is only one of production; once the instruction is given, the burden shifts to the State to disprove justification beyond a reasonable doubt. *See State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020); *State v. Delay*, 320 N.W.2d 831, 834 (Iowa 1982).

The reason the threshold is low is structural. Whether force was reasonable, whether a belief in its necessity was honestly and reasonably held, and how to weigh conflicting accounts of who did what to whom are quintessential jury questions. "[U]nder the facts here, it was the jury's and not the court's function to determine whether [the defendant] acted in self-defense." *Dunson*, 433 N.W.2d at 678. When a trial court refuses the instruction on the ground that the defense is unpersuasive, it does not decline to submit a question—it answers one that belongs to twelve other people. That is the error I believe occurred here.

## I.     The Record Contains Substantial Evidence of Justification

Viewed—as it must be at this stage—in the light most favorable to giving the instruction, the evidence describes far more than "an argument or pushing." *State v. Broten*, 176 N.W.2d 827, 831 (Iowa 1970). It describes an intoxicated aggressor who started the confrontation, escalated it, armed the apartment with broken glass, pursued a retreating man, and gave him every reason to expect the assault to continue.

Begin with the State's own eyewitness. A neighbor testified that the verbal argument began with "[n]ame calling," that "[Joseph's girlfriend] started it first," and that the two then "spit in each other's faces" before his girlfriend was put into the hallway. She testified that a picture frame had already been broken—leaving glass on the living-room floor—before the ejection occurred. The State's case thus established, without any help from Joseph, that his girlfriend was the initial aggressor in a mutual, physical altercation conducted amid broken glass.

Joseph's girlfriend's own testimony supplied the rest. She admitted she was "very drunk," had "relapsed," and was "the instigator." She testified: "I got really drunk that night . . . I got mad, started breaking things

in the house, started spitting at [Joseph], calling him names, and then . . . I was just being mean." Crucially, she described Joseph as the one trying to disengage: "He was trying to protect himself by, like, locking himself in the second bedroom, but I just kept trying to pry and pry and pry." She testified that he "was trying to get away from me, but I kept instigating the situation," that she pried the locked door open with a pen, and that she "kept going and going and going." She confirmed she broke not only the picture frame but her television, and she agreed it would have been reasonable for Joseph to believe that if she spit on him once she "might do it again," and that if she broke some things she "might break more." And it was undisputed that the two had lived together for roughly three years—placing Joseph in his own home, with no duty to retreat. *See* Iowa Code § 704.1(3).

From this evidence a rational juror could find each element of the defense. A juror could find that the girlfriend's spitting, her property destruction, and her pursuit of Joseph from room to room amounted to an ongoing, imminent use of unlawful force; that Joseph honestly and reasonably believed some force was necessary to end it; and that lifting his girlfriend by the hood of her sweatshirt and setting her outside the apartment door was a proportionate response by a man who had already retreated as far as a locked bedroom would allow. Whether a juror *would* so find is beside the point. "I'm not saying the jurors will be convinced," counsel told the court, "but there's enough there to warrant an instruction." He was right.

In *Dunson* the supreme court held that a defendant was entitled to a self-defense instruction even though the jury could have found he initially provoked the encounter, because the evidence showed a mutual combat in which the other party's renewed aggression could justify a defensive response. 433 N.W.2d at 677–78. Provocation by the defendant did not defeat

the instruction; the jury was to sort it out. *Id.* at 678. Here Joseph did not even provoke the encounter—his girlfriend did—yet he is denied what *Dunson* gave a defendant who arguably had provoked the incident.

The majority offers three reasons to withhold the instruction. I am unpersuaded by all three. First, the majority observes that the record does not establish Joseph's girlfriend "spit first," noting the neighbor's testimony that the two spit on each other. But mutuality is evidence of a fight. *Dunson* itself arose from mutual combat, and the supreme court did not require the defendant to prove he landed the second blow rather than the first. More to the point, the neighbor did testify to who started it: "[Joseph's girlfriend] started it first." And his girlfriend herself claimed the role of aggressor without qualification. The question of sequence—who escalated, when, and whether Joseph's response was defensive—is precisely the factual dispute a jury exists to resolve.

Second, the majority leans on the neighbor's testimony that Joseph acted "out of anger," as though anger and self-defense are mutually exclusive. They are not. Nothing in section 704.3 conditions justification on serenity. A man defending himself against a drunk, spitting, property-smashing partner who has pried open the door he locked against her is not required to feel calm about it, and the law has never said otherwise. The neighbor's reading of Joseph's facial expression—"[b]y the look on his face"—is exactly the sort of credibility-laden inference reserved to the jury. A court may not convert one witness's impression of a defendant's mood into a legal finding that forecloses his defense, particularly when the evidence at this stage must be viewed in his favor.

Third, the district court's written ruling rested on the proposition that "[a] self-defense instruction requires that a defendant admit that the incident

11

occurred." That is not the law. A defendant may assert inconsistent defenses, and our court has held that a defendant who denies the charged assaultive act is not thereby barred from a justification instruction where substantial evidence supports it. *See State v. Gomez*, No. 13-0462, 2014 WL 1714451, at *2–3 (Iowa Ct. App. Apr. 30, 2014); *cf. State v. Jenkins*, 412 N.W.2d 174, 175 (Iowa 1987) (describing a defendant's "inconsistent defenses"). In any event, the substantial evidence here did not depend on any admission by Joseph; it came "from any source," chiefly the State's witness and his girlfriend's account of her *own* conduct. *Dunson*, 433 N.W.2d at 677. Joseph was entitled to have the jury "piece [the testimony] together," as his counsel argued; he was not required to take the stand and narrate his own defense.

## II.    The Error Was Not Harmless

The majority alternatively holds any error harmless because the marshalling instruction told the jury Joseph's act had to be "without justification," so the jury necessarily found it was. With respect, this reasoning is undone by the majority's own footnote. The jury was given the *phrase* "without justification" but none of the instructions that give the phrase meaning were provided (e.g., no definition of justification, no statement of its elements, and no instruction that the State bore the burden to disprove it beyond a reasonable doubt). The majority suggests the phrase was included "in error." A jury cannot meaningfully find an act "without justification" when it has never been told what justification is or who must disprove it. Far from curing the omission, the orphaned phrase compounded it: it gestured at a defense the jury had no tools to evaluate and arguably placed the burden on the wrong party. Under *Delay*, once justification is in the case the State must disprove it beyond a reasonable doubt. 320 N.W.2d at 834. These instructions inverted that allocation.

The majority also invokes the girlfriend's recantation and the observation that domestic-abuse victims often recant. *See State v. Smith*, 876 N.W.2d 180, 187–88 (Iowa 2016). That principle is sound but deploying it to discount Joseph's girlfriend's exculpatory testimony is itself the error. Whether to credit or discredit a recanting witness is the jury's call, not ours; invoking recantation dynamics to supply harmlessness asks this court to resolve on a cold record the very credibility question the jury was never allowed to reach. Nor does the partial verdict help. The jury acquitted Joseph of causing bodily injury, convicting only of assault. A jury with that much doubt about the State's proof is precisely the jury that might have entertained a justification defense had it been instructed on one. The closeness of this case cuts toward prejudice, not away from it. The wrongful refusal of a supported affirmative-defense instruction is not harmless where, as here, the defense was the heart of the case.[2]

When substantial evidence would let a reasonable juror find that a man used proportionate force to put a drunk, spitting, property-breaking aggressor out of the home they shared, the choice between belief and disbelief is the jury's decision to make. The district court made that choice

---

[2] The majority declines to reach the prosecutorial-misconduct claim on preservation grounds. I would hold it preserved. The record reflects that the court moved directly from the State's rebuttal into reading the instructions without affording counsel an opportunity to be heard, and that defense counsel objected and moved for a mistrial at the first moment the court invited a record—immediately after the jury withdrew. More fundamentally, the State resisted the mistrial motion below solely on the merits and never argued the objection came too late; the district court likewise denied it on the merits, not as untimely. Having litigated the question on the merits in the district court, the State may not raise untimeliness for the first time on appeal. *See State v. Newton*, 929 N.W.2d 250, 254 (Iowa 2019); *State v. Rasmus*, 90 N.W.2d 429, 429–30 (Iowa 1958). On the merits, I would have the parties' arguments tested under *State v. Graves*, 668 N.W.2d 860 (Iowa 2003), rather than foreclosed at the threshold.

for the jury and then sent the jury out with a defense it had named but never explained. I would reverse and remand for a new trial. I respectfully dissent.